## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| **CHRISTINE GIEGERICH**<br>141 Versailles Circle, Apt E<br>Towson, MD 21204<br>*Resident of Baltimore County*<br><br>and<br><br>**AMELIA STEINMAN**<br>2106 Saint Paul Street, Apt 2F<br>Baltimore, MD 21218<br>*Resident of Baltimore City*<br><br>            Plaintiffs<br><br>v.<br><br>**WATERSHED LLC**<br>2010 Clipper Park Road<br>Suite 128<br>Baltimore, MD 21211<br><br>Serve: Stephen H. Kaufman, R.A.<br>            100 N. Charles Street<br>            16th Floor<br>            Baltimore, MD 21201<br><br>**DAVID S. GJERDE**<br>8 Elmwood Road<br>Baltimore, MD 21210<br>*Resident of Baltimore City*<br><br>and<br><br>**AMY L. GJERDE**<br>8 Elmwood Road<br>Baltimore, MD 21210<br>*Resident of Baltimore City*<br><br>            Defendants | Civil Action No.:<br><br>Collective Action Claim<br><br>Class Claims<br><br><u>Jury Trial Requested</u> |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR WAGES OWED

CHRISTINE GIEGERICH and AMELIA STEINMAN, Plaintiffs, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against WATERSHED LLC, DAVID S. GJERDE and AMY L. GJERDE, Defendants, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); and unpaid wages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401, *et seq.* (hereinafter, "MWHL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from the application of a common scheme devised by Defendants to avoid paying Plaintiffs and others similarly situated their wages owed. As described herein, Defendants operate several food and beverage establishments within Baltimore City. Defendants hired Plaintiffs and other similarly situated employees to perform duties relating to the operation of these establishments. This consists of preparing various food and beverage items for service. Plaintiffs and others similarly situated hold or held the title of pastry cooks, line cooks, preparation cooks (hereinafter, "prep cooks") and bread bakers.

Regardless of their title, Defendants paid Plaintiffs and others similarly situated employees a salary. As described by Defendants, this salary is termed "shift pay." This compensation method requires that Plaintiffs and others work a minimum of ten (10) hours per day in order to receive their day rate. This rate typically ranges anywhere between seventy-five dollars ($75.00) and one hundred and thirty dollars ($130.00) per day.

If Plaintiffs and others similarly situated did not work the required ten (10) hours, they were not compensated at all for any time worked that day. Defendants made clear to Plaintiffs and others that their daily wages would be denied altogether if they worked less.

Because Plaintiffs and others similarly situated were regularly required to work five (5) days a week, this resulted in Plaintiffs and others consistently working fifty (50) hours or more each week. However, working these overtime hours did not cause Plaintiffs and others to be paid the wages they are entitled. Defendants failed altogether to compensate Plaintiffs and others for the overtime hours they worked.

Thus, it will become clear that Defendants' "shift pay" method of pay was concocted for the sole purpose of not paying Plaintiffs and others for overtime. Through this unlawful scheme, Defendants willfully and intentionally evaded the payment of wages owed to Plaintiffs and others. Upon information and belief, Defendants are currently engaged in this unlawful activity.

## THE PARTIES

1. Plaintiff Christine Giegerich (hereinafter, "Giegerich") is an adult resident of Baltimore County, Maryland.

2. Plaintiff Amelia Steinman (hereinafter, "Steinman") is an adult resident of Baltimore City, Maryland.

3. Defendant Watershed LLC (hereinafter, "Watershed" and/or "Defendant") is an incorporated for profit business engaged in the sale of food and beverage items at various dining locations in Maryland. Watershed's principle office is in Baltimore City, where Watershed maintains its corporate office.

4. There are approximately four (4) Watershed establishments within the Baltimore/Maryland region. Upon information and belief, the same unlawful practices described

herein are implemented at all of these establishments. The names and addresses for these establishments are as follows: Woodberry Kitchen, 2010 Clipper Park Road, No. 126, Baltimore, Maryland 21211 (Baltimore City); Parts & Labor, 2600 N. Howard Street, Baltimore, Maryland 21218 (Baltimore City); Shoo-Fly[1], 510 E. Belvedere Avenue, Baltimore, Maryland 21212 (Baltimore City); and Artifact Coffee, 1500 Union Avenue, Baltimore, Maryland 21211 (Baltimore City).

5. Defendant David S. Gjerde (hereinafter, "D. Gjerde") is an adult resident of Baltimore City, Maryland. D. Gjerde is the co-owner of Watershed and the head chef of Woodberry Kitchen, which serves as Watershed's principle restaurant.

6. Defendant Amy L. Gjerde (hereinafter, "A. Gjerde") is an adult resident of Baltimore City, Maryland. A. Gjerde is the co-owner of Watershed.

7. Defendants are subject to the FLSA and MWHL by the nature of their business. Defendants are primarily engaged in the sale of food and beverage items.

8. Defendants are subject to the FLSA and MWHL due to the amount in revenues generated; Defendants' annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

9. At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce by the nature of their duties performed as part of their employment with Defendants.

10. Plaintiffs worked for Defendants, who, at all times throughout Plaintiffs' employment, fell within the purview of the term "employer" under the FLSA, 29 U.S.C. § 203(d) and MWHL, § 3-401(b). Plaintiffs and others similarly situated worked as non-exempt employees for Defendants.

---

1 Upon information and belief, on approximately May 23, 2015, Shoo-Fly closed its doors for business.

11. From approximately July 1, 2014 to February 7, 2015, Plaintiff Giegerich was employed with Defendants and held the title of pastry cook. For the entirety of her employment, Giegerich's duties were performed at Woodberry Kitchen, which is owned and operated by Watershed.

12. From approximately October 10, 2013 to May 10, 2015, Plaintiff Steinman was employed with Defendants and held the title of pastry cook. For the entirety of her employment, Steinman's duties were performed at Woodberry Kitchen, which is owned and operated by Watershed.

13. At all times relevant to this Complaint, Defendants controlled the administration of their business and set employee schedules, including Plaintiffs and other similarly situated employees' schedules.

14. Defendants possessed and exercised authority to determine the hours worked by Plaintiffs and others.

15. Defendants had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

16. Defendants had the power and authority to change the course of Plaintiffs and others' duties.

17. Defendants made all decisions relating to Plaintiffs and others' rates and method of pay.

18. Plaintiffs and members of the putative class recognized Defendants' authority and obeyed Defendants' instructions.

## JURISDICTION AND VENUE

19.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

20.     Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Maryland.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

21.     Plaintiffs and other similarly situated employees were hired to perform various food and beverage services at Defendants' establishments. Plaintiffs and others' duties primarily consisted of preparing and cooking an array of food and beverage items, which includes meats, seafood, poultry, vegetables, baked goods and various desserts. Plaintiffs and the putative class either hold or held the title of pasty cook, line cook, prep cook, or bread baker.

22.     During the course of their employment, Plaintiffs Giegerich and Steinman performed duties specific to their title of pastry cook. This consisted of preparing ice creams, cake batters, croissants and cookie dough.

23.     Although Plaintiffs Giegerich and Steinman primarily prepared food items for service at Woodberry Kitchen, they and others similarly situated were also charged with preparing food for the other restaurants/cafes owned and operated by Defendants. For instance, based on Defendants' demands, Plaintiffs and others similarly situated would regularly prepare pastry items and baked goods to be supplied at Shoo-Fly and Artifact Coffee.

24.     In regards to what needed to be prepared for service, Plaintiffs, other pastry cooks, prep cooks and bread bakers would all follow a list. These protocols were enforced daily and implemented at all of Defendants' establishments.

25. The list was typically created the night before each shift by a lead chef, or another supervisor/management official. It contained the specifics as to what food items needed to be prepared, and was also specific as to quantity.

26. Plaintiffs and others had to specifically conform to what was demanded within the list that they were given. Plaintiffs and others could not create or prepare any food items that were not designated within this list. As such, Plaintiffs and others had no decision-making authority, nor discretion, in regards to the food items they prepared. Only the employees of Defendants that were deemed lead chefs and/or supervisors retained this discretion. These circumstances existed for the entirety of Plaintiffs and others' employment.

27. In addition to food preparation, Plaintiffs and the putative class were charged with setting up stations and collecting the necessary supplies to cook. Plaintiffs and others were also responsible for arranging sauces and supplementary garnishes at their stations.

28. Plaintiffs and others similarly situated also had to perform unrelated cooking tasks. This was in regards to closing the kitchen correctly and cleaning duties specific to their stations.

29. Plaintiffs and others similarly situated satisfied the requirements of their job and adequately performed their duties to benefit Defendants, as well as Defendants' patrons.

30. For the entirety of their employment, Plaintiffs worked as salaried employees for Defendants.

31. For the aforementioned work, from approximately July 1, 2014 to February 7, 2015, Plaintiff Giegerich received bi-weekly payments for the sum of approximately one thousand one hundred dollars ($1,100.00). These payments were based on Giegerich's day rate of ($110.00) and her being scheduled to work ten (10) days bi-weekly.

32. From approximately October 10, 2013 to March 1, 2014, Plaintiff Steinman received bi-weekly payments for the sum of approximately one thousand dollars ($1,000.00). This was based on a day rate of one hundred dollars ($100.00) for the approximately ten (10) days she was scheduled to work bi-weekly.

33. Following this, Plaintiff Steinman received a raise. From approximately March 1, 2014 to June 1, 2014, she received bi-weekly payments for the sum of one thousand one hundred and fifty dollars ($1,150.00). This was based on a day rate of ($115.00) for the ten (10) days she was scheduled to work each bi-weekly period.

34. Subsequent to June 1, 2014, Plaintiff Steinman received another raise. Her day rate was one hundred and twenty five dollars ($125.00), which equated to bi-weekly payments of one thousand two hundred and fifty dollars ($1,250.00). She received these payments until approximately September 1, 2014.

35. On approximately September 1, 2014, Plaintiff Steinman received another raise; her bi-weekly salary was thirteen hundred dollars ($1,300.00), which was based on a day rate of one hundred and thirty dollars ($130.00). She received this rate until the time her employment ended.

36. Defendants informed Plaintiffs that they would receive a set salary for each day that they worked. Defendants made clear to Plaintiffs that in order to receive their salaries, they would have to work ten (10) hours per day. Defendants described this payment scheme as "shift pay." Due to the demands of Plaintiffs and others employment, working less than ten (10) hours per day was not an option.

37. The time that Plaintiffs and others similarly situated began their workday varied. The time that Plaintiffs were scheduled to begin their shifts typically ranged between 8:00 a.m. and

1:00 p.m.[2] However, regardless of the time their workday began, based on the "shift pay" method of compensation described herein, Plaintiffs and others were always required to stay for at least ten (10) hours. Plaintiffs and others typically worked this schedule five (5) days a week.

38. As a result, Plaintiffs and others routinely worked well over forty (40) hours in a workweek. Their schedules demanded that Plaintiffs and others work at least fifty (50) hours per week. Due to their heavy workloads, Plaintiffs can recall periods that they worked as many as fifty-five (55) to seventy (70) hours per week.

39. Although there were no scheduled break times, nor any polices that relate to breaks, Plaintiffs and others' heavy workload rarely allowed for them to take a meal or rest period. When given the chance, Defendants' strict scheduling practices only allowed for Plaintiffs and others to break quickly. Thus, it was routine for Plaintiffs and others to work straight through their shifts.

40. Although Plaintiffs and others were salaried employees, they were still required to "clock in" in the mornings when their shifts began, and "clock out" at the time their shifts ended. This was completed through software known as Acrotime. This software enabled Defendants to verify the hours that Plaintiffs worked. The software was implemented in approximately June of 2014, at which time Defendants mandated that Plaintiffs and others record the hours they worked.

41. If Plaintiffs and others worked the mandated ten (10) hours, only then did Plaintiffs earn their "shift" pay. This day rate bears a direct relationship to the weekly salary that Plaintiffs received. For instance, when Plaintiffs and others worked five (5) days a week, this resulted in Plaintiffs and others receiving their full salary. Plaintiffs and others' salaries were often reduced when they did not work one (1) or more of the five (5) days in their typical schedule.

---

2 From approximately October 10, 2013 until June 1, 2014, Plaintiff Steinman's shifts regularly began at 11:00 a.m.

42. This "shift pay" method of compensation allows Defendants to evade both Federal and Maryland wage laws. Although Plaintiffs and others consistently worked in excess of forty (40) hours per week, they were not compensated at an overtime rate of not less than one and a half (1.5) times their regular rates of pay.

43. There is no bona fide dispute that Plaintiffs and other similarly situated employees are owed overtime wages for hours worked over forty (40) in a workweek. At no time did Plaintiffs and others' duties include work that would make them exempt from the FLSA and MWHL provisions requiring that they be paid overtime wages.

44. Defendants were well aware of the overtime hours worked by Plaintiffs and others similarly situated.

45. Defendants were actively engaged in the management and direction of Plaintiffs and others.

46. Defendants were regularly present in Plaintiffs and others' work area.

47. Defendants controlled and supervised the work performed by Plaintiffs and other similarly situated employees and suffered or permitted Plaintiffs and others to work more than forty (40) hours per week.

48. In bad faith, Defendants withheld overtime wages owed to Plaintiffs and other similarly situated employees. Thus, Plaintiffs seek their wages owed and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49. Defendants employed Plaintiffs and others similarly situated to perform work at Defendants' food and beverage establishments. These establishments include Waterfront Kitchen,

Parts & Labor, Shoo-Fly and Artifact Coffee. Plaintiffs and other similarly situated employees either hold or held the title of pastry cook, line cook, prep cook, or bread baker.

50. Upon information and belief, these similarly situated employees were subject to the same unlawful practices described within this Complaint; Defendants paid these similarly situated employees a salary for the sole purpose of not paying these employees overtime wages.

51. The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated overtime wages for all hours worked over forty (40) within a workweek.

52. Defendants knew that Plaintiffs and other similarly situated employees typically and customarily worked over forty (40) hours per week and suffered or permitted Plaintiffs and others to work more than forty (40) hours per week.

53. Defendants knew, or should have known, that Plaintiffs and those similarly situated were entitled to overtime payments for hours worked in excess of forty (40) in a workweek.

54. Pursuant to the FLSA, Plaintiffs commence this collective action against Defendants on behalf of themselves and those similarly situated for the payment of wages owed for all hours worked at an overtime rate of not less than one and a half (1.5) times their regular rates of pay.

55. Plaintiffs consent to be party plaintiffs in this matter; Plaintiffs' consent forms are attached to this Complaint as Exhibits A - B. It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

56. There are numerous similarly situated current and former employees of Defendants that have been harmed by Defendants' common scheme to underpay their employees and violate the FLSA.

57. These similarly situated persons are known to Defendants and are readily identifiable through Defendants' records.

58. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

59. Upon information and belief, others will choose to join Plaintiffs in this action and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

60. Plaintiffs bring this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other current and former employees that were employed as pastry cooks, line cooks, prep cooks, or bread bakers for Defendants, at one or more of Defendants' food and beverage establishments, which includes Waterfront Kitchen, Parts & Labor, Shoo-Fly and Artifact Coffee, and were subject to the following practices and policies:

61. Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek.

62. Plaintiffs are members of the proposed class they seek to represent.

63. The claims alleged by Plaintiffs are typical of the claims of the proposed class members.

64. The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

65. There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

66. Counsel for the proposed class are qualified and experienced in litigating MWHL class actions and other complex litigation matters; furthermore, counsel are capable of providing adequate representation for all members of the proposed class.

67. A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I. Violation of the FLSA: Failure to Pay Overtime Wages

68. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

69. Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

70. As described above, Plaintiffs have not received from Defendants compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendants failed to compensate Plaintiffs for these additional hours.

71. Defendants willfully and intentionally failed to compensate Plaintiffs for the overtime wages they were owed. There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendants.

72. Under the FLSA, Plaintiffs are entitled to additional wages from Defendants to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### *Count II. Violation of MWHL: Failure to Pay Overtime Wages*

73. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

74. Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate; furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

75. Plaintiffs have not received compensation from Defendants reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

76. Defendants willfully and intentionally did not compensate Plaintiffs for the overtime wages they were owed. There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendants.

77. Under MWHL, Plaintiffs are entitled to additional wages from Defendants for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) Designation of this action as a class action on behalf of Plaintiffs and all members of the proposed class;

c) Judgment against Defendants for their failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

d)  Judgment against Defendants for their failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by MWHL;

e)  An award against Defendants for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' regular hourly rate for all overtime hours worked, to Plaintiffs and those similarly situated;

f)  An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

g)  An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendants;

h)  Leave to add additional plaintiff, opt-in or party, through the filing of consent forms; and

i)  All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

_____/s/_____
Benjamin L. Davis III, Esq. (29774)
bdavis@nicholllaw.com
James A. Lanier (13789)
jlanier@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:   (410) 244-8454

*Attorneys for Plaintiffs*