**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHRISTINE GIEGERICH, et al. | : | |
| | : | |
| v. | : | Civil No. CCB-15-1728 |
| | : | |
| WATERSHED, LLC, et al. | : | |

**MEMORANDUM**

  This case involves allegations of withheld minimum and overtime wages in violation of state and federal law.  The plaintiffs[1] worked as cooks at Woodberry Kitchen, Parts & Labor, Shoo-Fly Diner and Artifact Coffee.  The defendants include the corporate owners of each of these establishments as well as affiliated individuals.  Before the court is the plaintiffs' motion for conditional certification of a Fair Labor Standards Act ("FLSA") collective action, and for the court's assistance in identifying and notifying similarly situated employees.  The issues have been fully briefed, and no oral argument is necessary.  *See* Local R. 105.6 (D. Md. 2014).  For the reasons that follow, the motion will be granted.

**BACKGROUND**

  Giegerich and Steinman initially filed suit against Watershed, LLC, David Gjerde, and Amy Gjerde on June 12, 2015, raising minimum wage and overtime claims under the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the Maryland Wage and Hour Law, Md. Code, Lab. & Empl. §§ 3-401 *et seq.* (Compl., ECF No. 1).  On August 11, 2015, the plaintiffs amended their complaint, adding Artifact, LLC, Foodshed, LLC, Parts & Labor, LLC, and Corey Polyoka as defendants.

---

[1] There are currently twenty party plaintiffs in this case: Christine Giegerich, Amelia Steinman, Justin Beaver, Sunday Alexander, Michael Gliniecki, Jauquin Turnage, Brian Cieslak, Amanda Welsh, Wesley Scribner, Christopher Carino, Rebecca Karten, Marissa Fein, Jeffrey Schultz, Christopher A. Lewis, Alton Lind, Kiwanna McKoy, Sarah McAdams, Rebecca Frost, Siba Soropogui, and Hunter Lucas.

(Am. Compl., ECF No. 27). The plaintiffs filed a second amended complaint on November 20, 2015, adding Farmhouse Diner and Oystershed, LLC as a defendant. (Second Am. Compl., ECF No. 53). By the end of 2015, eighteen additional plaintiffs had joined the suit by filing notices of consent to become a party plaintiff.[2]

On September 2, 2015, the plaintiffs moved for conditional certification under 29 U.S.C. § 216(b), and for the court's assistance in identifying and notifying similarly situated employees. (Mot. Conditional Certification, ECF No. 38). The defendants have opposed this motion. (Opp'n Mot. Conditional Certification, ECF No. 45). The facts stated below come primarily from the plaintiffs' declarations, which they attached as support for their motion and reply brief.

The plaintiffs allege violations at four food and beverage establishments: Woodberry Kitchen, Parts & Labor, Artifact Coffee, and Shoo-Fly Diner (collectively, "the restaurants").[3] The plaintiffs each worked at one or more of these establishments as a pastry cook, line cook, preparation cook ("prep. cook"), or bread baker (collectively, "cooks"). Some plaintiffs interviewed at one location and were hired to work at another. Others were transferred between restaurants without having to complete additional employment paperwork.

---

[2] Plaintiffs Beaver, Alexander, Gliniecki, Turnage, Cieslak, Welsh, Scribner, Carino, Karten, and Fein filed notices of consent to become a party plaintiff on July 16, 2015. (Notices, ECF Nos. 13–22). Schultz filed notice on August 10, 2015, (Notice, ECF No. 25), and Lewis and Lind filed the same on August 20, 2015. (Notices, ECF Nos. 33–34). McKoy, McAdams, and Frost filed notices on September 16, 2015. (Notices, ECF Nos. 42–44). Soropogui filed notice on November 11, 2015, (Notice, ECF No. 49), and Lucas filed the same on December 15, 2015. (Notice, ECF No. 63).

[3] Each restaurant is owned by a separate corporate defendant: Woodberry Kitchen is owned by defendant Watershed, LLC; Parts&Labor is owned by defendant Parts&Labor, LLC; Artifact Coffee is owned by defendant Artifact, LLC; and Shoo-Fly Diner was owned by defendant Farmhouse Diner and Oystershed, LLC prior to its closing. (Opp'n Mot. Conditional Certification, Exs. 1 & 2, D. Gjerde & Polyoka Affs., ECF No. 45-1). It is unclear on the record currently before the court the extent of defendant Foodshed, LLC's connection to these entities. Defendants David Gjerde and Corey Polyoka aver that they have knowledge of the ownership and management structure of each of these corporate entities; however, that information is not provided in the defendants' affidavits. *Id.* According to the plaintiffs' declarations, the individual defendants were recognized as authority figures at each of these establishments, and David Gjerde and Amy Gjerde were recognized as the owners. The defendants do not describe the Gjerdes' actual relationship to the restaurants; they simply aver that the individual defendants do not "directly own any of the four restaurants." (Opp'n Mot. Conditional Certification 2, ECF No. 45).

In their positions as cooks, the plaintiffs were responsible for preparing and cooking a variety of food and beverage items according to instructions provided by the defendants.  They usually prepared these items for their respective restaurants; occasionally, they prepared items for use at the defendants' other restaurants.  The plaintiffs also had to perform related tasks such as gathering supplies and cleaning their workstations; it appears, however, that this work was peripheral to their main role as cooks.

All of the plaintiffs were compensated under the same "shift pay" system.[4]  Under this system, the plaintiffs were paid for each shift worked rather than receiving an hourly wage.[5]  The plaintiffs' assigned shifts were typically a minimum of 10 hours, with compensation ranging from $75 to $130 per shift.  If a plaintiff did not complete his assigned shift (e.g. leaving work three hours into a ten hour shift), he would receive no compensation for the work already performed that day.  The plaintiffs worked these 10+ hour shifts five or more days a week.  Additionally, they report often being expected to work after their shifts had ended.   This resulted in the plaintiffs regularly working more than 40 hours a week; however, they were not paid overtime wages.  This schedule, and their additional work beyond the scheduled shifts, resulted in some plaintiffs' wages falling below the federally mandated minimum wage.  The plaintiffs contend this system applied to all cooks at each of the four restaurants.[6]

---

[4] In some instances, "shift pay" appears to be a misnomer.  Several declarants aver that they were often required to work two shifts on the weekend to accommodate brunch service, yet they were only paid for a single shift.  Thus, it appears that shift pay is more accurately described as daily pay.

[5] Even though the plaintiffs were compensated on a shift pay basis, the defendants required their employees to clock in and out of work using an automated timekeeping system.  The plaintiffs report not regularly using this system as the hours recorded had no impact on their daily shift pay.  Some suggest they clocked in and immediately clocked out simply to record their presence at work that day.

[6] To the extent they dispute the plaintiffs' factual allegations, the court need not consider the defendants' contradictory assertions in deciding whether notice-stage certification is appropriate.  *See Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 (D. Md. 2008) ("[F]actual disputes do not negate the appropriateness of court-facilitated notice.").

## ANALYSIS

### I. Conditional Certification

The plaintiffs ask the court to conditionally certify a class and facilitate notice of all cooks who have worked for the defendants at Woodberry Kitchen, Parts&Labor, Shoo-Fly Diner, or Artifact Coffee. They offer declarations from eight party plaintiffs as support[7] and argue that the party plaintiffs are similarly situated to the defendants' other cooks compensated under the shift pay system.

The defendants argue in response that the proposed representative plaintiffs are not similarly situated because the plaintiffs had differing job titles, responsibilities, rates of pay, and work schedules. Additionally, they claim the plaintiffs worked for different restaurants, owned by different companies, in different locations. In the alternative, the defendants argue that the class should be limited to pastry chefs at Woodberry Kitchen who received shift pay and line cooks at Parts & Labor who received shift pay as those were the only positions and restaurants covered by the affidavits attached to the plaintiffs' motion for conditional certification. The court rejects these arguments.

#### a. Legal Standard

Under the FLSA, a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). After an initial complaint is filed, other similarly situated employees may become party plaintiffs by giving "consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Accordingly, § 216(b) "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court

---

[7] The plaintiffs' opening brief included declarations by Christine Giegerich, Sunday Alexander, Justin Beaver, and Wesley Scribner. The plaintiffs' reply included declarations by Jeffrey Schultz, Kiwanna McKoy, Alton Lind, and Christopher Lewis.

of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008).

"When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). "In the first stage, commonly referred to as the notice stage, the court makes a 'threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate.'" *Id.* (quoting *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010)) (some internal quotation marks omitted). "In the second stage, following the close of discovery, the court conducts a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b)." *Id.* (citation omitted).

The instant case has reached the first stage of this process. Thus, the central question here is whether the party plaintiffs have proffered enough for the court to make a threshold determination that they are "similarly situated" to the potential class members. Similarly situated does not mean identical. *Id*. "Rather, a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Id.* "[P]laintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay." *Robinson v. Empire Equity Grp., Inc.*, Civil No. WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848–49 (N.D. Ill. 2008)).[8] In other words, "[a] plaintiff must only present 'a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions . . . .'" *Shaver v. Gills Eldersburg, Inc.*, Civil No. ELH-14-3977, 2015 WL

---

[8] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

5897463, at *9 (D. Md. Oct. 6, 2015) (quoting *De Luna-Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)).

To meet their burden at this stage, the plaintiffs must make only "a relatively modest factual showing," *Randolph v. PowerComm Constr., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (internal quotation marks omitted), although "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000).  Employees cannot reasonably be expected, however, to have evidence of a stated policy of refusing to pay overtime or the minimum wage.  *See Quinteros*, 532 F. Supp. 2d at 772.

### b.  The Plaintiffs are Similarly Situated

The plaintiffs have made the necessary "modest factual showing" that they are similarly situated to other cooks compensated under the shift pay system.  The plaintiffs' detailed declarations suggest they were all subject to the shift pay system, and they had the same general job responsibilities of preparing and cooking food and beverage items.[9]  They each aver that, under this system, they were required to work a full shift of at least 10 hours in order to receive their daily wage (or any compensation at all for that day).  Each declarant claims they consistently worked over 40 hours a week without receiving overtime payments.  Also, because the plaintiffs worked as much as 55 to 120 hours a week, the shift pay system sometimes resulted in their being paid less than the minimum wage.

Taken together, these assertions suggest the cooks at the defendants' restaurants were subject to a common policy, scheme, or plan—an abusive shift pay system—that deprived them of the minimum and overtime wages to which they were entitled.  *See Faust v. Comcast Cable*

---

[9] The defendants argue that job responsibilities were particular to each individual plaintiff.  The court finds this argument unavailing.  While the cooks may have prepared different types of food or beverage, they all performed the same basic function.

*Commc'ns Mgmt., LLC*, Civil No. WMN-10-2336, 2011 WL 5244421, at *5 (D. Md. Nov. 1, 2011) (plaintiffs made the necessary "modest factual showing" by submitting evidence that they were "encouraged to work off the clock, [were] in fact working off the clock with their supervisor's knowledge, and [were] not being properly compensated for that time"). The issues particular to individual plaintiffs, such as differing job titles, rates of pay, or time-keeping methods, are insufficient to defeat certification at this stage in the process. *See Robinson*, 2009 WL 4018560, at *3.

### c. The Restaurants' Different Locations and Corporate Ownership

Attempting to avoid certification, the defendants also argue that the four restaurants are "owned by four different companies and, therefore, [are] not a 'restaurant chain,'" which should preclude a finding that cooks from different restaurants were similarly situated. (Opp'n Mot. Conditional Certification 10, ECF No. 45). They assert "there can be no dispute that the Purported Representatives worked for different companies, worked for different restaurants, and worked in different locations." *Id.* at 11. Multiple locations owned by multiple entities, however, do not preclude a finding of a common policy, scheme, or plan. The FLSA acknowledges this reality by extending its overtime and minimum wage protections to employees of an "enterprise engaged in commerce." *See* 29 U.S.C. §§ 206–07. Under the statute, an enterprise includes

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities **whether performed in one or more establishments** or by one or more corporate or other organizational units . . . .

29 U.S.C. § 203(r)(1) (emphasis added); *see also Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989).

Another judge of this court previously held that two taverns, although owned by separate entities, were a single enterprise when the taverns sold food and drink in the same neighborhood

to similar clientele (related activities), were controlled by the same individual owner (common control), and shared a business objective of selling food and drink to paying customers (common business purpose). *See Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 891–92 (D. Md. 2011). As in *Gionfriddo*, the facts of the instant case show that four of the corporate defendants, Artifact, LLC, Parts&Labor, LLC, Watershed, LLC, and Farmhouse Diner and Oystershed, LLC, operated as a single enterprise. Each of those entities owned an establishment selling food and drink in Baltimore City. The plaintiffs' declarations reveal (1) plaintiffs prepared food at one restaurant for the benefit of another; (2) plaintiffs were hired to work at one restaurant after interviewing at another location; (3) plaintiffs were transferred between restaurants without having to complete new employment paperwork; and (4) plaintiffs at each of the restaurants recognized the individual defendants as having authority over the operations of each establishment. These facts show that the defendants employed uniform operations or common control to conduct related activities for a common business purpose.[10] The defendants operated the restaurants as a single enterprise; that they have different corporate owners does not negate the existence of a common policy, scheme, or plan and will not affect the court's approval of notice-stage conditional certification.

    d. **Scope of Class**

The parties dispute the appropriate scope for a conditionally certified class. The defendants argue that any class should be limited to pastry chefs at Woodberry Kitchen and line cooks at Parts&Labor, as only plaintiffs in those positions submitted declarations attached to the motion for conditional certification.[11] In the defendants' view, the plaintiffs must offer more

---

[10] The court also notes, but does not rest its decision on, the individual defendants' public representations regarding their operation of Foodshed, LLC as a restaurant chain comprised of the four restaurants at issue in this case.
[11] The defendants note that a declaration was also provided by a line cook at Shoo-Fly Diner, but because the corporate owner of Shoo-Fly Diner was not then named as a defendant, it would not be subject to any notice

than vague assertions that they were aware, through their employment, of the pay practices for employees with different job titles or at different restaurants. The declarations, however, do not rely solely on the plaintiffs' personal experiences. Jeffery Schultz and Alton Lind attested that, following initiation of this suit, they attended a meeting of all of the defendants' employees. During this meeting, David Gjerde announced that all cooks would move from the shift pay system to being paid on an hourly basis. Moreover, Schultz avers that, as a result of his promotion to a managerial position at Woodberry Kitchen, he was aware that all cooks were paid using the shift pay system. The defendants' argument therefore fails. *See Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 826 (D. Md. 2012) (granting motion for conditional certification where, on "the limited discovery record," there was "some evidentiary basis" that the defendant hospital's practices extended to "all three shifts and . . . all units of the facility"); *Williams v. ezStorage Corp.*, RDB-10-3335, 2011 WL 1539941, at *3 (D. Md. Apr. 21, 2011) (granting motion for conditional certification where the plaintiff's affidavit indicated "he personally talked" with other employees "who also complained of uncompensated work demands imposed by their . . . supervisors").

Accordingly, the court will grant the plaintiffs' motion for conditional certification of a class comprised of all cooks presently or previously employed by the defendants who were compensated under the shift pay system.

## II. Notice

Where the court has conditionally certified a collective action, it has "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) (citation omitted). *See also Calder v. GGC-*

---

requirement attendant to a conditional certification. The corporate owner of Shoo-Fly Diner is now a named defendant, and the court need not consider this argument.

*Baltimore, LLC*, Civil No. BPG-12-2350, 2013 WL 3441178, at *3 (D. Md. July 8, 2013) ("So as to facilitate that notice, defendant is directed to supply plaintiffs with identifying information for the potential plaintiffs, to include full name, last known residential address, and last known e-mail address."). The plaintiffs have requested that the parties be given seven days to confer and determine if they can agree to the notice's content. The court will so order, though it retains the ability to modify any proposed notice.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for conditional certification and for the court's assistance in identifying and notifying similarly situated employees will be granted. A separate order follows.

<u>March 24, 2016</u>                                                 <u>          /S/              </u>
Date                                                                              Catherine C. Blake
                                                                                      United States District Judge